DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Marcia Brown, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation, and ordering the commission to issue a new order finding that she is entitled to such compensation.
 {¶ 2} This matter was referred pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District to a magistrate, who has rendered a decision that includes findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that this court should deny the requested writ. Relator has filed objections to the magistrate's decision, and the matter is now before this court for an independent review pursuant to Civ.R. 53.
 {¶ 3} Relator's claim was allowed for "Strain/sprain right shoulder; right rotator cuff tear; adjustment disorder with depressed mood; cervical disc displacement," arising from a work-related injury incurred on April 30, 1996.
 {¶ 4} In support of her application for PTD, relator submitted a report prepared by her treating psychiatrist, who opined that relator was permanently and totally disabled from any type of sustained remunerative employment due to her allowed psychiatric impairment. Also in the record is a vocational evaluation which concludes that, given relator's allowed psychiatric conditions, she could not return to gainful employment.
 {¶ 5} Relator was also examined by psychologist Barry Klein, Ph.D., for her psychological conditions. Dr. Klein's report opines, as an initial conclusion, that relator's psychological condition currently precludes any meaningful employment. Dr. Klein went on, however, to opine that relator would not be able to "return to meaningful employment without further intervention."
 {¶ 6} The commission's staff hearing officer ("SHO") relied on Dr. Klein's opinion to conclude that relator had not reached maximum medical improvement, because of the psychologist's reference to the need for further psychological or psychiatric treatment. In conjunction with a vocational analysis of the other medical and non-medical disability factors, the SHO concluded that relator was capable of sustained remunerative employment and was not permanently and totally disabled, denying the application for PTD.
 {¶ 7} The magistrate, in addition to finding that the commission had not abused its discretion in its analysis of the other medical and non-medical factors, concluded that the commission's reliance on Dr. Klein's report to find that relator had not reached maximum medical improvement was not an abuse of discretion. The magistrate found that the commission's interpretation of the report was reasonable, that relator was in need of ongoing psychiatric treatment which she was not currently receiving, and that relator had not reached "a treatment plateau * * * at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures." Ohio Adm. Code 4121-3-32(A)(1).
 {¶ 8} Relator's objections to the magistrate's decision in this case are limited to the appropriateness of the conclusions that the commission and the magistrate drew from Dr. Klein's report with respect to whether relator had reached maximum medical improvement. Having completed an independent review of the record, this court finds that there is no error in the magistrate's decision in this respect, and all arguments raised by relator's objections were in fact addressed and disposed of correctly by the magistrate. The court accordingly overrules relator's objections and adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein. As such, relator's request for a writ of mandamus is denied.
Objections overruled; writ denied.
Sadler and French, JJ., concur.
Wright, J., retired, of the Ohio Supreme Court, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Marcia Brown, :
 Relator, :
v. : No. 04AP-81
Duramed Pharmaceuticals, Inc. and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on July 16, 2004 Butkovich, Schimpf, Schimpf Ginocchio Co., L.P.A., Daryl A.W.Crosthwaite and Stephen P. Gast, for relator.
Jim Petro, Attorney General, and Shareef Rabaa, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 9} Relator, Marcia Brown, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation, and ordering the commission to issue an order finding that she was entitled to the requested compensation.
Findings of Fact:
 {¶ 10} 1. Relator sustained a work-related injury on April 30, 1996, and her claim has been allowed for: "Strain/sprain right shoulder; right rotator cuff tear; adjustment disorder with depressed mood; cervical disc displacement."
 {¶ 11} 2. Relator underwent a diagnostic arthroscopy of her right shoulder on January 15, 1987, and a cervical diskectomy on November 14, 1998.
 {¶ 12} 3. On September 17, 1999, relator filed an application for PTD compensation. At the time, relator was 43 years old, had completed the 11th grade and subsequently obtained her GED and studied accounting at Cincinnati State for approximately three years, could perform basic math, read and write. Relator's employment history included work in material control, shipping and receiving, packaging, and working as a granulator. Relator had worked as a clerk and chief assistant for First Quality Vending, worked for Western Temporary Services, and performed clerical work and work as a loader for United Parcel Service. Relator had served in the United States Air Force but was honorably discharged for medical reasons.
 {¶ 13} 4. In support of her application, relator submitted the April 11, 2000 report of her treating psychiatrist, Dr. Phillip Edelstein, who opined that relator was permanently and totally disabled from any type of sustained remunerative employment due to her allowed psychiatric impairment.
 {¶ 14} 5. The record also contains the December 22, 1999 vocational evaluation of Dr. Jennifer Stoeckel, Ph.D. Dr. Stoeckel opined that, given relator's allowed psychiatric conditions, she could not return to gainful employment.
 {¶ 15} 6. Relator was examined by Dr. Joe L. Hughes for her allowed orthopedic conditions. In his report dated December 21, 1999, Dr. Hughes noted the following:
* * * [Relator] was diagnosed as having a sprain of the right shoulder. She was then treated for this and eventually had an arthroscopic evaluation and a tear of the rotator cuff found. She had an arthrotomy done in 1987 at which time she states that she never really got better. * * * S[h]e states that she also in 1986 she leaned forward on the wrist and felt something pop in her neck. She then went to get an evaluation and was found to have a ruptured C4-5 disc of a large degree. She then underwent surgery in 1997 and had a fusion done including 4 vertebrae. She stated that afterwards still had some neck pains and shoulder pains. * * *
 {¶ 16} Dr. Hughes noted that relator appears to have a great deal of difficulty with emotional situations and depression. From a physical standpoint, he concluded that she could resume light-duty work at a number of jobs and that she was not permanently disabled at this time. At the end of his report, Dr. Hughes made the following statements regarding her neck injury:
* * * Altogether, her symptomology of her neck is related to her 1986 injury, I would doubt that was significant. If she had a ruptured disc at the magnitude that she presented in 1996, from the years 1986 to 1996, I would think that she would definitely have had this diagnosed and picked up prior to that time. I would have to feel her neck injuries consisting of a ruptured disc were unrelated to the injury of 1986. I would feel that she probably had a strain of the neck, if anything, at that time.
 {¶ 17} Dr. Hughes completed an occupational activity assessment indicating that relator could sit for three to five hours a day, stand and walk each for zero to three hours a day; lift, carry, push, pull or otherwise move up to ten pounds for three to five hours a day, up to 20 pounds for zero to three hours a day, could not lift or carry above 20 pounds but could push, pull or otherwise move between 20 and 50 pounds for zero to three hours a day; relator could occasionally climb stairs and ladders, use foot controls, crouch, stoop, bend, knee, handle objects, reach overhead, at knee and floor levels and should could frequently reach at waist level.
 {¶ 18} 7. Relator was examined by Barry Klein, Ph.D., for her psychological conditions, and his report, although he found that relator was exaggerating her symptoms either in a deliberate attempt to make herself look worse or as of way of asking for help, that:
* * * Given the chronicity of her condition and her low level of daily functioning, it is highly unlikely that she will ever be able to return to meaningful employment without further intervention. It is my opinion that Ms. Brown is currently totally disabled from any meaningful employment. Despite her exaggerated style of responding on the MMPI-2, she is obviously suffering from major depression and is greatly in need of ongoing psychological and psychiatric intervention.
 {¶ 19} 8. An employability assessment report was prepared by Nancy J. Borgeson, Ph.D., dated March 4, 2000. Based upon the report of Dr. Hughes, Dr. Borgeson listed several jobs which relator could perform. Dr. Borgeson found relator to be a younger person, that her having obtained a GED was a positive factor and that she has had a variety of work experiences. However, Dr. Borgeson noted that the fact that she was receiving social security disability benefits and had not worked for 13 years, she would have difficulty adjusting to a full-time work routine at this time.
 {¶ 20} 9. Relator's application was heard before a staff hearing officer ("SHO") on April 12, 2000, and resulted in an order denying the application for PTD compensation. The SHO relied upon the medical reports of Drs. Hughes and Klein and the vocational report of Dr. Borgeson. Based upon the report of Dr. Hughes, the SHO concluded that relator was capable of performing sedentary and light-duty work. In discussing the psychological report of Dr. Klein, the SHO noted the following:
Claimant was also referred to a 12/21/1999 and 12/28/1999, evaluation by Dr. Barry Klein, Ph.D., Licensed Psychologist. Dr. Klein opines that due to the allowed psychological condition claimant is unable to return to any former position of employment, and, without intervention, she is unlikely to return to any meaningful employment. Thus, read conversely, with intervention, claimant is likely to return to meaningful employment. Nevertheless, on its face, Dr. Klein's opinion is found to mean the claimant has not reached maximum medical improvement. Therefore, there is present indication of recovery from the psychological condition.
 {¶ 21} Thereafter, the SHO provided the following vocational analysis of the nonmedical disability factors:
The claimant is 43 years old. She has an 11th grade education, a G.E.D. and some college. Her entire employment history consists of skilled or semi-skilled jobs. Several of those jobs: material coordinator, administrative clerk, and general clerk, are jobs within her physical capabilities. Consequently, given her young age, her proven educational ability, and her skilled or semi-skilled work experience, the Staff Hearing Officer finds no factor which would effect her ability to obtain and perform employment at the sedentary and light work levels. Therefore, the Staff Hearing Officer finds that the claimant is capable of sustained remunerative employment and is not permanently and totally disabled. Accordingly, the IC-2 application filed on 09/17/1999 is denied.
 {¶ 22} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 24} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 25} In asserting that the commission abused its discretion, relator first contends that the report of Dr. Hughes is fatally flawed as he did not accept the allowed condition of cervical herniation at C4-5 and that his report is internally ambiguous. Secondly, relator contends that the commission abused its discretion by interpreting Dr. Klein's report to conclude that relator had not yet reached maximum medical improvement ("MMI"). For the following reasons, this magistrate concludes that relator's arguments lack merit.
 {¶ 26} It is undisputed that an examining physician must accept that the claimant has all of the conditions which have been allowed in the claim. In Domjancic, the claimant attempted to discredit the report of Dr. Gonzalez by arguing that Dr. Gonzalez had noted that there was no evidence of a herniated disc L4-5 on the right when those conditions had been allowed in his claim. The Ohio Supreme Court disagreed with claimant's arguments and noted that, at the outset of his report, Dr. Gonzalez outlined all of the allowed conditions. As such, the court concluded that Dr. Gonzalez established that he was aware of what the claimant's recognized conditions were and that the fact that he found no evidence of a herniated disc did not amount to a repudiation of the allowance.
 {¶ 27} In the present case, as outlined in the findings of fact, Dr. Hughes specifically noted relator's diagnoses and established an awareness of both the diagnoses as well as the surgeries which relator had had in relation to those allowed conditions. He then conducted his physical examination, noted his objective findings, and concluded that she could perform light-duty work. At the end of his report, he did note that it was his opinion that her ruptured cervical disc was not related to the 1986 injury since she did not have any problems with that disc until 1996. However, this magistrate concludes that his opinion did not serve as a repudiation of his acceptance that her claim had actually been allowed for that condition nor did it represent a finding that he did not take it into consideration during his physical examination of her range of motion. As such, this magistrate concludes that Dr. Hughes' report did constitute some evidence upon which the commission could have relied in finding that relator was capable of work at a sedentary to light-duty level.
 {¶ 28} Relator next contends that the commission abused its discretion by interpreting the report of Dr. Klein to mean that she had not reached MMI. Relator points out that Dr. Klein specifically noted that "Ms. Brown is currently totally disabled from any meaningful employment." Relator contends that the only reasonable interpretation of Dr. Klein's report is that she is permanently and totally disabled as a result of her allowed psychiatric condition.
 {¶ 29} In concluding that Dr. Klein believed that relator could return to some employment provided that she received psychological intervention, the commission relied upon these statements: "Given the chronicity of her condition and her low level of daily functioning, it is highly unlikely that she will ever be able to return to meaningful employment without further intervention. * * * Despite her exaggerated style of responding on the MMPI-2, she is obviously suffering from major depression and is greatly in need of ongoing psychological and psychiatric intervention."
 {¶ 30} MMI is defined in Ohio Adm. Code 4121-3-32(A)(1) as follows:
"Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function.
 {¶ 31} It is understood that a claimant can be at MMI and yet still require supportive treatment to maintain their level of function. In the present case, Dr. Klein specifically noted that relator needs psychological intervention and, in his report, he does indicate that without psychological intervention she will not be able to return to any meaningful employment. A doctor's report is not rendered ambiguous where the doctor notes that a claimant is totally disabled at this time but that, with further treatment, they may be able to return to work. This magistrate concludes that the commission's interpretation of Dr. Klein's report does not constitute an abuse of discretion. The record in the present case indicates that relator is currently residing in Georgia with her ex-husband while her treating psychologist, Dr. Klein, resides in Ohio. Relator moved to Georgia in 1996. Within the history section of Dr. Klein's report, relator informed him that she does not see a doctor in Atlanta and that when she needs to see a doctor, she travels to Cincinnati. Obviously, relator is not receiving ongoing psychiatric treatment which, according to Dr. Klein, would presumably help her condition. Based upon the evidence in the record, this magistrate concludes that this was a reasonable interpretation of Dr. Klein's report. Relator also argues that the vocational experts interpreted Dr. Klein's report in such a way that, based upon his report, Dr. Borgeson concluded that relator could not perform any sustained remunerative employment. However, vocational reports do not constitute medical reports and the commission is the final determiner of the vocational factors. This case involves weight and credibility of medical reports. This magistrate concludes that relator has not demonstrated that the commission abused its discretion.
 {¶ 32} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny her request for a writ of mandamus.